```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```

_____

|                              |   |                            |
|------------------------------|---|----------------------------|
| **NATHANIEL SMITH** and      | ) |                            |
| **BETTY SMITH**,             | ) |                            |
|                              | ) |                            |
|    Plaintiffs,| ) |                            |
|                              | ) |                            |
| vs.                          | ) | Civil No. 13-2098-JDT/tmp  |
|                              | ) |                            |
| **MEMPHIS LIGHT, GAS AND WATER**, | ) |                       |
| and **DOES 1-20**,           | ) |                            |
|                              | ) |                            |
|    Defendants.| ) |                            |

_____

**REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL**
_____

On February 15, 2013, the plaintiffs, Nathaniel and Betty Smith, filed a *pro se* complaint alleging that the defendant, Memphis Light, Gas and Water ("MLG&W"), unlawfully turned off their utilities and rejected their "payment" in the amount of $9,053.38, allegedly delivered to MLG&W in the form of an electronic funds transfer sent by mail. (ECF No. 1).[1] A motion seeking leave to proceed *in forma pauperis* was filed the same day. (ECF No. 2). On April 30, 2013, the court issued an order granting the plaintiffs

_____

[1]The plaintiffs also named "Does 1-20" as defendants. Service of process cannot be made on unnamed or fictitious parties. The filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitations against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023, 1028 (6th Cir. 1968). Accordingly, it is recommended that the complaint be dismissed against the John Doe defendants.

leave to proceed *in forma pauperis*, (ECF No. 5), and referred the case to the *pro se* staff attorney for screening. This case has now been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (ECF No. 4.) For the reasons that follow, it is recommended that the complaint be dismissed.

## I. PROPOSED FINDINGS OF FACT

The plaintiffs' complaint is styled "COMPLAINT FOR VIOLATION OF ELECTRONIC FUND TRANSFERS ACT, FAIR DEBT COLLECTION PRACTICES ACT, CONSUMER CREDIT PROTECTION ACT, CONSPIRACY TO DEFRAUD, MAIL FRAUD AND WIRE FRAUD, PUBLIC LAW 73-10, PUBLIC LAW 10 CH. 48, STAT 48-112 HJR 192 1933, TRADING WITH THE ENEMY ACT." The plaintiffs "invoke[] the jurisdiction of this court pursuant to 28 USC [sic] Section 1343(A)(3)(4), Section 1331, and pursuant to the 14th Amendment, Title 42 USC Section. [sic] 1983, and the Civil Rights Act of 1870." (ECF No. 1 ¶ 4.) The complaint alleges that the plaintiffs are "natural person[s] who reside in Shelby County, Tennessee," (ECF No. 1 ¶ 6), and that defendant MLG&W is a municipal utility that provides electricity, natural gas, and water services to residents of Shelby County. (Id. ¶ 7.) In the complaint, the plaintiffs allege that MLG&W "willfully, intentionally, and maliciously" turned off their utilities "without probable cause." (Id. ¶ 12.)

The plaintiffs allege that on October 30, 2012, they attempted

to pay off their debt by sending $9,053.38 to MLG&W by an electronic funds transfer ("EFT") sent by certified mail in order to "discharge the associated debt." (Id. ¶ 17). They allege that MLG&W refused to accept the EFT, stating that "[t]he instrument is not an acceptable form of payment and was not applied to your account," (id. ¶ 18 & 20),[2] and that MLG&W failed to return the unidentified EFT instrument. (Id. ¶ 20.) The plaintiffs contend that the refusal to credit their account or return the EFT instrument has discharged their debt. (Id. ¶ 22.) The complaint further alleges that defendant unlawfully and fraudulently disconnected plaintiffs' utilities. (Id. ¶ 25.) The plaintiffs seek compensatory damages in the amount of $50,000,000 and punitive damages in the amount of $50,000,000. (Id. p. 16.) They also seek declaratory relief, (id. ¶¶ 13-15), and injunctive relief (id. ¶¶ 47-53).

## II. PROPOSED CONCLUSIONS OF LAW

### A. 28 USC 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The Clerk is authorized to issue summonses to *pro se* litigants only after that review is complete

---

[2] In paragraphs 17 and 18 of the complaint, the plaintiffs reference Exhibits 1 and 2; however, there are no exhibits attached to the complaint.

and an order of the court issues. The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

    (i)       is frivolous or malicious;

    (ii)      fails to state a claim on which relief may be granted; or

    (iii)     seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2). This report and recommendation will constitute the court's screening.

**B.    Standard of Review for Failure to State a Claim**

In assessing whether the complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-79 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007). "Accepting all well-pleaded allegations in the complaint as true, the court considers the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." <u>Willams v. Curtin</u>, 631 F.3d 380, 383 (6th Cir. 2011). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Iqbal</u>, 556 U.S. at 679; <u>see also</u> <u>Twombly</u>, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket

assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint violates these provisions when it "is so verbose that the Court cannot identify with clarity the claim(s) of the pleader and adjudicate such claim(s) understandingly on the merits." Harrell v. Dirs. of Bureau of Narcotics & Dangerous Drugs, 70 F.R.D. 444, 446 (E.D. Tenn. 1975); see also Flayter v. Wis. Dep't of Corr., 16 Fed. App'x 507, 509 (7th Cir. 2001) (dismissing 116-page complaint pursuant to Rule 8(a)(2)); Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 775-76 (7th Cir. 1994) (criticizing district court for declining to dismiss amended complaint with prejudice pursuant to Rule 8(a) and noting that "[a] complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation"); Plymale v. Freeman, 930 F.2d 919 (table), 1991 WL 54882, at *1 (6th Cir. Apr. 12, 1991) (finding that district court did not abuse its discretion in dismissing with prejudice "rambling" 119-page complaint containing nonsensical

claims); Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) ("A . . . complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is presented and if so what it is. And it must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding.") (citation omitted) (internal quotation marks omitted); Michaelis v. Neb. State Bar Ass'n, 717 F.2d 437, 438-39 (8th Cir. 1983) (per curiam) (affirming dismissal of 98-page complaint where "[t]he style and prolixity of these pleadings would have made an orderly trial impossible"); Gordon v. Green, 602 F.2d 743, 744-45 (5th Cir. 1979) (concluding that a 4000-page pleading, comprised of "various complaints, amendments, amended amendments, amendments to amended amendments, and other related papers," did not comply with Rule 8(a) "as a matter of law"); Windsor v. A Federal Exec. Agency, 614 F. Supp. 1255, 1258 (M.D. Tenn. 1983) (noting that a 47-page complaint was excessive, in light of the purpose of a pleading to state a simple claim, as well as "confusing and distracting" and ordering plaintiff to amend his complaint to comply with Rule 8), aff'd mem., 767 F.2d 923 (table), 1985 WL 13427 (6th Cir. June 27, 1985) (per curiam).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal

quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 Fed. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 Fed. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf.* Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 Fed. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**C. Claims Under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.,* and Regulation E, 12 C.F.R. 205 *et seq.***

The Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") was enacted as part of the comprehensive Consumer Credit

Protection Act, 15 U.S.C. §§ 1601-1693r ("CCPA") and "protects individual consumer rights by 'provid[ing] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" Clemmer v. Key Bank Nat'l Ass'n, 539 F.3d 349, 351 (6th Cir. 2008) (citing 15 U.S.C. § 1693(b)). Because EFTA is a remedial statute, it is accorded "'a broad, liberal construction in favor of the consumer.'" Id. (quoting Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1998)).

The implementing regulations for EFTA, which are known as "Regulation E" and codified at 12 C.F.R. § 205 *et seq.*, state that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer." 12 C.F.R. § 205.10(b). The regulations further provide that "[t]he person that obtains the authorization shall provide a copy to the consumer." Id. EFTA allows recovery for actual damages, statutory damages for technical violations, and attorney's fees and costs. 15 U.S.C. § 1693m(a).

Under the EFTA, the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not

limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. 15 U.S.C. § 1693a(7). Electronic fund transfers covered by the Act have three components: 1) a transfer of funds, 2) initiation by electronic means, and 3) a debit or credit to a consumer account.

Here, the plaintiffs allege in their complaint that they initiated an EFT transfer by certified mail, not by electronic transfer. Their attempted transaction is therefore clearly not covered by the EFTA, and their allegations are insufficient to demonstrate any violation of the CCPA. Accordingly, it is recommended that any claims under the EFTA, the CCPA, and Regulation E be dismissed for failure to state a claim. Walker v. J P Morgan Chase Bank, N.A., No. 13-2100-JDT-dkv, 2013 WL 2151713, at *5 (W.D. Tenn. May 16, 2013).

**D. Claims Under 42 U.S.C. §§ 1983, 1985, 1986, and 1988**

The plaintiffs state in their complaint under the heading of "Jurisdiction and Venue" that they "bring this action pursuant to sections 1983, 1985, 1986, and 1988." (ECF No. 1 ¶ 4.) The court addresses each of these claims below.

1. Section 1983

The plaintiffs' § 1983 claim is apparently based on their allegation that MLG&W, by shutting off their utilities, violated

-9-

plaintiffs' due process rights under the Fourteenth Amendment.[3] Section 1983 of Title 42 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States . . . ." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982). The Fourteenth Amendment prohibits governmental deprivation of "life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. Courts separate claims alleging deprivation of due process into two categories: violations of substantive due process and violations of procedural due process. Midkiff v. Adams Cnty. Reg'l. Water Dist., 409 F.3d 758, 762 (6th Cir. 2005) (citations omitted); see also Charles v. Baesler, 910 F.2d 1349, 1353 (6th Cir. 1990) ("Due process may impose either substantive or procedural limitations upon a particular deprivation"). "Procedural due process is traditionally viewed as the requirement that the government provide a fair procedure when depriving someone of life, liberty, or property; substantive due process protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." EJS Properties, LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted).

---

[3]The court will assume, for the purpose of this screening, that MLG&W, as a municipal utility, is subject to suit under § 1983.

A procedural due process claim involves a two-part analysis: "First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." Midkiff, 409 F.3d at 762–63; see also Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002). "Substantive due process claims, in comparison, serve[] as a vehicle to limit various aspects of potentially oppressive government action." Handy-Clay v. City of Memphis, 695 F.3d 531, 546–47 (6th Cir. 2012) (quoting Howard v. Grinage, 82 F.3d 1343, 1349 (6th Cir. 1996)) (internal quotation marks omitted). "They often fall into one of two categories — claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that 'shock[s] the conscience.'" Id. at 547 (quoting Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997) (citations omitted)). "Where government action does not deprive a plaintiff of a particular constitutional guarantee or shock the conscience, that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." Id. (quoting Valot, 107 F.3d at 1228) (internal quotation marks omitted).

The complaint fails to state claim for either substantive or procedural due process violations. Regarding substantive due

process, the complaint contains no allegations that MLG&W deprived the plaintiffs of any constitutional guarantee, or that MLG&W's action would even come close to shocking the conscience. Regarding procedural due process, "a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991). Even assuming, *arguendo*, that the complaint sufficiently alleges the existence of a protected property interest in a government service, see Midkiff, 409 F.3d at 762, plaintiffs have not alleged that MLG&W has an established procedure that itself violates due process, or that MLG&W failed to provide them with notice and a fair procedure to challenge the decision to shut off their utilities. Because the complaint fails to state a claim for a violation of due process, it is recommended that the § 1983 claim be dismissed.

    2. Section 1985

The complaint also does not assert a valid claim against the defendant under 42 U.S.C. § 1985, which prohibits conspiracies to deprive persons of certain civil rights on account of their membership in a protected class. Although the complaint does not

specify which of the three subsections of § 1985 is at issue, the plaintiffs presumably are relying on 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999); see also Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 832 (6th Cir. 2007). Construed liberally, the plaintiffs' complaint does not allege that the defendant was motivated by racial, or other class-based, discriminatory animus. Accordingly, it is recommended that any claim under 42 U.S.C. § 1985 be dismissed for failure to state a claim. Walker, 2013 WL 2151713, at *7.

    3. <u>Section 1986</u>

Because the plaintiffs have no viable claim under 42 U.S.C. § 1985, they also have no claim under 42 U.S.C. § 1986. "Section 1986 establishes a cause of action against anyone, who has knowledge of a conspiracy under § 1985, and having power to prevent

or aid in preventing the commission of the same, neglects or refuses so to do." Radvansky v. City of Olmstead Falls, 395 F.3d 291, 314 (6th Cir. 2005) (internal quotation marks omitted). Because the complaint does not state a claim under § 1985, it necessarily follows that there can be no liability under § 1986. Id. at 315; Bass, 167 F.3d at 1051 n.5. Accordingly, it is recommended that any claim under 42 U.S.C. § 1986 be dismissed for failure to state a claim. Walker, 2013 WL 2151713, at *7.

    4. Section 1988

The other federal statute cited by the plaintiffs, 42 U.S.C. § 1988, does not itself provide a cause of action. Moor v. Alameda Cnty., 411 U.S. 693, 710 (1973); Henderson v. Reyda, 193 F. App'x 392, 397 (6th Cir. 2006); Vaughan v. City of Shaker Heights, No. 1:10-CV-0609, 2011 WL 5966808, at *1 n.2 (N.D. Ohio Aug. 30, 2011), report and recommendation adopted, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011); Cortis v. City of Coleman, No. 10-13261-BC, 2011 WL 1518901, at *6 (E.D. Mich. Apr. 20, 2011). Accordingly, it is recommended that any claim under 42 U.S.C. § 1988 be dismissed for failure to state a claim. Walker, 2013 WL 2151713, at *7.

**E. Trading with the Enemy Act**

In the first paragraph of the complaint, plaintiffs make a single reference to the Trading with the Enemy Act, but provide no further allegations relating to this "claim." Any "claim" brought by the plaintiffs pursuant to the Trading with the Enemy Act, 50

U.S.C. App. § 1 et seq., is frivolous and should be dismissed.

**F. Claim Under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.**

The Smiths fail to state a claim under the FDCPA, because the complaint fails to allege that MLG&W is a "debt collector" within the meaning of the statute. (ECF No. 1 ¶ 7.) MLG&W, as a creditor, cannot be sued under the FDCPA. Collins v. Mortg. Elec. Registration Sys., Inc., No. 3:11-cv-00264, 2012 WL 610191, at *7 (M.D. Tenn. Feb. 24, 2012) (dismissing FDCPA claim "[b]ecause the instant Defendants are creditors"), report and recommendation adopted, 2012 WL 848041 (M.D. Tenn. Mar. 12, 2011). The Smiths' complaint fails to allege facts demonstrating that MLG&W's principal purpose is collecting debts. Accordingly, the complaint fails to state a claim under the FDCPA. It is recommended that any claim under the FDCPA be dismissed for failure to state a claim. Walker, 2013 WL 2151713, at *6.

**G. Mail and Wire Fraud**

In the caption of the complaint, the plaintiffs make a single reference to "Mail and Wire Fraud," but provide no further allegations in the complaint relating to this "claim." In any event, the plaintiffs have no private right of action for alleged violations of 18 U.S.C. §§ 1341 and 1343. Saro v. Brown, 11 F. App'x 387, 388 (6th Cir. 2001). "Violations of these sections of the federal criminal code do not give rise to independent, private

causes of action." Id. (citing Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 386 (6th Cir. 1997)). It is recommended that this claim be dismissed for failure to state a claim.

**H.  Jurisdiction Over Remaining State Law Claims**

The plaintiffs also assert claims under state law for wrongful termination of utilities, common law fraud, violations of the Uniform Commercial Code ("UCC"), and conversion. The court has determined that every federal claim asserted by the plaintiffs should be dismissed for failure to state a claim. Without a basis for federal jurisdiction, the court should not exercise supplemental jurisdiction over any state law claims by the plaintiffs. See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, it is recommended that any remaining state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3). Walker, 2013 WL 2151713, at *11.

### III.  RECOMMENDATION

For the reasons above, it is recommended that the purported federal claims be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2), that the court decline jurisdiction over the remaining state law claims based on 28 U.S.C. § 1367(c)(3), and that judgment be entered for MLG&W.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

October 7, 2013
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FED. R. CIV. P. 72(b)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**